No. 50,921

STATE OF KANSAS, *Appellee*, v. DALTON M. HOLT, *Appellant.*

(612 P.2d 570)

Opinion filed June 14, 1980.

*Robert C. Claus,* of Crossan & Claus, of Independence, argued the cause and filed a brief for the appellant. *Alvin F. Grauerholz,* of Coffeyville, filed a separate brief for the appellant.

*Paul D. Oakleaf,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Jeffrey A. Chubb,* assistant county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: Dalton M. Holt was convicted of felony murder, K.S.A. 21-3401, and attempted aggravated robbery, K.S.A. 21-3301 and 21-3427, upon jury trial in Montgomery district court. Consecutive sentences of life imprisonment and not less than two

nor more than ten years were imposed. Holt appeals, raising numerous issues which we will detail later in this opinion.

The facts giving rise to this case took place in the early morning hours of June 25, 1978, in the lobby of the Russell Motel at Coffeyville. The manager, James Lee Ware, was shot in the neck during the course of an attempted robbery. Mr. Ware died on July 10, 1978, from complications caused by the gunshot wounds. Before he died, Mr. Ware identified James Lloyd and Ricky Lloyd as his assailants.

The Lloyd brothers were arrested and charged with the offense. Through the investigative efforts of the mother of the Lloyds and their attorney, Roger Gossard, new evidence was uncovered. Charges against the Lloyd brothers were dropped and Dalton Holt, Joseph Fulcher, and Clyde Allen Smith were charged.

Holt was tried separately. The evidence linking him with the fatal occurrence is that Holt, Fulcher and Smith got together on the evening of June 24 and planned to rob a number of businesses in Coffeyville with a "Saturday night special" revolver belonging to Holt. Early the following morning, Holt and Smith entered the motel. Smith was armed with Holt's revolver. Fulcher remained outside as a lookout. Holt and Smith intended to rob the manager, Ware. When Ware bent over behind the counter, Smith feared that he was reaching for a gun; Smith panicked and shot him in the neck. Smith and Holt then fled from the scene.

Defendant first contends that the trial court erred in refusing to stay the proceedings until defendant had an opportunity to investigate and gather evidence in support of his challenge to the legality and constitutionality of the jury selection process in Montgomery County. In short, he contends that the trial court abused its discretion in failing to grant a continuance.

Originally, Holt and Fulcher were codefendants, and a joint trial was scheduled for January 17, 1979. Fulcher had filed a timely motion challenging the array, K.S.A. 22-3407. On the morning of trial Fulcher was successful in obtaining a severance. Holt then adopted Fulcher's motion challenging the jury panel. Holt also filed a motion to strike the panel and a memorandum in support of his motion. He moved for a stay to enable him to develop evidence of discrimination.

K.S.A. 22-3407 provides:

"(1) Any objection to the manner in which a jury panel has been selected or

drawn shall be raised by a motion to discharge the jury panel. The motion shall be made at least five days prior to the date set for trial if the names and addresses of the panel members and the grounds for objection thereto are known to the parties or can be learned by an inspection of the records of the clerk of the district court at that time; in other cases the motion must be made prior to the time when the jury is sworn to try the case. For good cause shown, the court may entertain the motion at any time thereafter.

"(2) The motion shall be in writing and shall state facts which, if true, show that the jury panel was improperly selected or drawn.

"(3) If the motion states facts which, if true, show that the jury panel has been improperly selected or drawn, it shall be the duty of the court to conduct a hearing. The burden of proof shall be on the movant.

"(4) If the court finds that the jury panel was improperly selected or drawn, the court shall order the jury panel discharged and the selection or drawing of a new panel in the manner provided by law."

The State objected to defendant's motion challenging the array because it was not filed at least five days prior to trial. The trial court overruled the State's objection, heard argument, and denied both defendant's request for a stay and his motion to strike the panel.

We have not previously ruled upon the sufficiency of a motion under K.S.A. 22-3407. Our cases involving a challenge to the array have come before us after an evidentiary hearing. For example, see *State v. Sandstrom,* 225 Kan. 717, 730, 595 P.2d 324, *cert. denied* November 5, 1979; *State v. Campbell,* 217 Kan. 756, 539 P.2d 329, *cert. denied,* 423 U.S. 1017 (1975); *State v. Woods,* 191 Kan. 433, 381 P.2d 533 (1963), *cert. denied,* 376 U.S. 919 (1964).

In determining whether the trial court abused its discretion in failing to stay the trial and grant a continuance, we are called upon to determine the sufficiency of the motion to strike the panel. United States Supreme Court cases display some liberality in requiring a hearing on questions of alleged discrimination in the jury selection process. See, for example, *Coleman v. Alabama,* 377 U.S. 129, 12 L.Ed.2d 190, 84 S.Ct. 1152 (1964); *Test v. United States,* 420 U.S. 28, 42 L.Ed.2d 786, 95 S.Ct. 749 (1975); and *Duren v. Missouri,* 439 U.S. 357, 58 L.Ed.2d 579, 99 S.Ct. 664 (1979). In *Duren* the court prescribes the elements needed for a prima facie showing of discrimination, saying:

"In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the

number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." 439 U.S. at 364.

The Fulcher motion alleged only that the population of Coffeyville was 10% black and that there were no blacks on the array. The motion filed by Holt "relies on the facts enunciated" in the Fulcher motion and, in addition, alleged in effect that the jury selection process utilized was discriminatory.

Panels of jurors to serve in district courts are drawn from the entire county, not from a specific city. See K.S.A. 43-155 *et seq.* Only about one-third of the population of Montgomery County is included in Coffeyville; thus the statistics on that city alone would not give an accurate picture of the base from which jurors were drawn. One black juror was drawn on the panel for trial of the Holt case. Nothing in the record before us indicates what percentage of black jurors has been drawn in Montgomery County in the past.

Our statute requires that the motion "state facts which, if true, show that the jury panel was improperly selected or drawn." This imposes a duty upon the moving party to go beyond a bald claim of discrimination, and to state *some basis* for the claim. The Supreme Court of Florida reviewed rulings of a trial court on motions targeted at the Florida grand jury selection process in *Rojas v. State,* 288 So. 2d 234 (Fla. 1973), *cert. denied,* 419 U.S. 851 (1974). That court said:

"None of the motions involved in either portion of the grand jury challenge was supported by affidavits, and, other than the conclusory statements contained in the motion itself, there was no showing of any facts sufficient to raise any suspicion that the grand jury pool was improperly constituted. The motions for production of the grand jury master list and for an evidentiary hearing were denied by the trial court, as were the motions seeking dismissal of the information and the underlying indictment.

. . . .

". . . As stated in 47 Am. Jur. 2d, Jury, § 182, one objecting to the composition of a jury panel must allege such discrimination as is here asserted by asserting *facts* to show the existence of the discrimination. Additional support may be found in United States v. Hoffa, 349 F.2d 20 (C.A. 6, 1965), and in Windom v. United States, 260 F.2d 384 (C.A. 10, 1958), both of which stand for the proposition that before a court will be required to permit a full-scale investigation of its jury panel, the panel must be *shown to be suspect.* This does not, of course, require that the challenge *show* that the panel is improperly constituted; but what it *does* require is that the challenger assert *facts* that tend to raise a doubt as to whether the panel *may* be improperly constituted. Then follows the inquiry to see if such suspicion, duly alleged, is supported by proof.

20

". . . In the instant case, we have neither a showing that the panel was suspect nor an affidavit showing any factual basis upon which such a suspicion could properly rest; we have only the bare conclusory allegations of the motion itself. This is insufficient." 288 So. 2d at 236-237.

Chief Judge Murrah, in *Windom v. United States,* 260 F.2d 384 (10th Cir. 1958), said:

"[T]he burden of making a showing that some class was improperly excluded from the jury lies with the defense. Frazier v. United States, 335 U.S. 497, 69 S.Ct. 201, 93 L.Ed. 187. . . . Surely, some showing of a disposition to discriminate is prerequisite to a searching investigation. The court should not be required to permit a full scale investigation of its jury panel until it is suspect." 260 F.2d at 385.

The holdings of the Florida and Tenth Circuit courts echo the requirements of our statute. Facts indicating "that the jury panel was improperly selected or drawn" must be included in a motion challenging the venire before a hearing is required. The mere facts that one area of a county has a certain percentage of minorities in its population, and that one black person and three persons with Spanish surnames are drawn on a panel, do not indicate any irregularity or make that panel suspect. Here no attempt was made to gather and present demographic statistics of distinctive population groups in the area from which the panel was drawn, and the composition of past panels was not mentioned. These facts could have and should have been developed prior to the date set for trial. Upon the meager facts presented, the panel was not suspect, and the trial court was correct in denying both the motion to discharge the jury panel and the motion for a stay.

Defendant next contends that the court erred in allowing the State to introduce evidence that sometime prior to the shooting of Mr. Ware the defendant pulled a gun on Glen Chambers. It was the State's theory that Holt, using Chambers' identification papers, purchased the murder weapon. Chambers formerly lived with Debbie Scott; he left his driver's license with her when he was sent to prison. Holt then moved in with Debbie. About that time someone using Chambers' driver's license purchased the alleged murder weapon, a silver .22 caliber revolver with brown grips. Chambers testified that he did not purchase the gun; that he had seen a similarly described revolver in Holt's possession when

Holt pulled it on him; and that when he (Chambers) returned from prison, he was unable to obtain his belongings, including his driver's license, from Debbie.

This evidence was not offered under K.S.A. 60-455 to prove motive or any of the other factors listed in that statute, nor was it introduced in rebuttal to evidence of defendant's good character. It was offered to show that defendant had the alleged murder weapon in his possession prior to the killing with which he was charged. As such it was relevant for a purpose independent of K.S.A. 60-455, and thus the criteria of that statute are inapplicable and no § 455 limiting instruction is required. *State v. Martin,* 208 Kan. 950, 495 P.2d 89 (1972). "Evidence which is otherwise relevant in a criminal action is not rendered inadmissible because it may disclose another or independent offense." *State v. Solem,* 220 Kan. 471, Syl. ¶ 3, 552 P.2d 951 (1976).

Defendant contends there was error in the receipt of certain testimony of a State witness, Roger Gossard. No purpose would be served by detailing the lengthy testimony here. We have carefully examined the trial transcript and find that the subject matter of which defendant now complains was first injected into the record by defendant's cross-examination of another witness, Curtis Harris. Having opened the door, defendant cannot now complain. Further, the testimony was not prejudicial, and were it error, it would not amount to reversible error.

Clyde Allen Smith, the juvenile who participated with defendant in the offense, was called as a State witness. He denied knowledge of the critical events of the offense, denied participation, but admitted that he knew both Holt and Fulcher. The State then impeached Smith with a statement Smith had previously made to detectives admitting his involvement with Holt in the crime. The prior statement was admitted into evidence; defendant cites this as error.

The statement was admissible under K.S.A. 60-460(*a*). Smith was present at the trial; he was available for cross-examination; and "the statement would be admissible if made by declarant [Smith] while testifying as a witness." Defendant does not contend that Smith was unavailable for cross-examination, and the record indicates that defense counsel was able through cross-examination to create doubt as to the prior statement's reliability. This case is not within the rule of *State v. Lomax & Williams,* 227

Kan. 651, 608 P.2d 959 (1980), where the witness, though present, was not available for cross-examination.

In *State v. Fisher,* 222 Kan. 76, 563 P.2d 1012 (1977), we said:

"Prior hearsay statements of a 'turncoat witness' are admissible as substantive evidence under K.S.A. 60-460(*a*)." Syl. ¶ 2.

"Admission of a declarant's out-of-court statement does not violate the right of confrontation guaranteed by the Sixth Amendment to the United States Constitution and Section Ten of the Bill of Rights of the Kansas Constitution as long as the declarant has been called and testifies as a witness and is subject to full and effective cross-examination." Syl. ¶ 4.

Under that rationale, Smith's prior statement was admissible here.

Defendant asserts that the admission of Smith's statement was an abuse of discretion. Relying upon *United States v. Morlang,* 531 F.2d 183 (4th Cir. 1975), the State's calling of Smith as a witness is viewed as "a subterfuge to get before the jury the otherwise inadmissible statements of Clyde Allen Smith," since the State knew in advance that Smith, a juvenile, would not testify along the lines of his prior statements. This court has previously rejected application of the *Morlang* rationale in a situation also involving prior inconsistent statements of children. *State v. Farley,* 225 Kan. 127, 587 P.2d 337 (1978). As in this case, the statements in *Farley* were taken by law enforcement officials interviewing children who did not have the benefit of the presence of parents or counsel. However, this appeal presents a weaker case for abuse of discretion or subterfuge. In *Farley* the children made statements regarding· the circumstances of their father having shot a man who was threatening them. The children's statements were the only evidence that the shooting had not been accidental or in self-defense. Here, Smith's statements were against his own interest, and had been the subject of a voluntariness hearing and the basis of a delinquency adjudication. In addition, Smith's version of the crime was corroborated by the testimony of Harris and Fulcher. The statement's probable reliability and probative value outweigh considerations indicating an abuse of discretion. We find no error.

Did the court err in admitting Exhibit No. 18, a .22 caliber revolver, into evidence? The State contends that this was the murder weapon, though evidence of that fact is circumstantial. Defendant was identified as the purchaser of that gun. He was seen with it, or a very similar weapon, in his possession prior to

the homicide. After the homicide, defendant traded it for a rifle; the gun identified as Exhibit No. 18 was recovered from the person to whom defendant traded it. The poor quality of the gun made positive identification of the fatal bullet as having been fired from this weapon impossible, but an expert was of the opinion that the bullet *could* have been fired from this gun. Finally, the description of the actual murder weapon given by Clyde Allen Smith is uniquely similar to that of the gun received in evidence.

Under our Rules of Evidence all relevant evidence is admissible. K.S.A. 60-407(f). The evidence established a reasonable inference that the gun received in evidence was in fact the murder weapon. Frequently it is impossible to prove that a particular weapon, be it gun, knife, club, or other object, delivered the fatal shot or blow; but where the evidence links the defendant with the weapon, where the weapon could have caused the wound sustained, and where its use is shown to be reasonable or probable, the receipt of the object in evidence is proper. The trial court did not err in receiving the exhibit.

Defendant contends that the court should have given a cautionary instruction. We have examined the proposed instruction submitted by counsel and find it to be argumentative. The matter of evidence was covered by appropriate instructions, and the trial court did not err in refusing to give the proffered instruction directed at Exhibit 18.

Next, defendant claims that he was prejudiced by the judge's comments about the credibility of one of the State's witnesses. Joseph Fulcher testified that on Sunday afternoon, the day following the robbery, Clyde Allen Smith, Dalton Holt and the witness were together in the defendant's apartment. Fulcher testified, without objection, as to statements then made by the defendant about the robbery and shooting. The witness was then asked: "What, if anything, did Clyde Allen Smith tell you about the robbery?" Objection was made that the evidence was hearsay. In ruling, the judge said: "Well, the truth establishes that Dalton Holt was present at the time the statements were made."

At the time of this ruling the only evidence was that Holt was present when this conversation took place. No specific evidence was ever offered to show that he was not present at that time. The out-of-court statement of Smith would have been admissible if

made by Smith while testifying as a witness; Smith was present, testified, and was available for cross-examination. The evidence was thus admissible under the first exception in our hearsay statute. See K.S.A. 60-460(*a*).

The statement of the trial judge that "the truth establishes that Dalton Holt was present . . ." was error if it is viewed either as a comment on the credibility of the witness or as a comment on the evidence. No objection was made at the time. The defendant's presence at the place of the conversation on the day following the shooting is not one of the critical issues in the case; it does not establish his presence at the time and place of the offense on the prior day. K.S.A. 60-261 provides that:

> "No error in . . . any ruling . . . or in anything done . . . by the court . . . is ground for . . . vacating, modifying or otherwise disturbing a judgment . . . unless refusal to take such action appears to the court inconsistent with substantial justice. The court . . . must disregard any error . . . which does not affect the substantial rights of the parties."

The trial court's inadvertent comment does not affect defendant's substantial rights. It relates to a matter tangential and not essential. We find it harmless error.

Defendant claims error in failure of the trial court to instruct on lesser degrees of homicide. The State's evidence indicated that the fatal shot was fired during an attempted robbery; the defense was alibi. Either Holt was guilty of felony murder or he was not guilty; there was no evidence to support lesser degree instructions, and the trial court did not err in failing to give them.

We have carefully reviewed other points raised by the defendant but not specifically mentioned in this opinion and find them to be without merit.

The judgment is affirmed.