### STATE OF CONNECTICUT *v.* JOHN A. GRAHAM
### (12508)

HEALEY, SHEA, DANNEHY, SANTANIELLO and DEAN, Js.

Argued February 6—decision released May 27, 1986

*Conrad O. Seifert,* for the appellant (defendant).

*Richard A. Schatz,* assistant state's attorney, with whom, on the brief, was *C. Robert Satti,* state's attorney, for the appellee (state).

SANTANIELLO, J. The dispositive issue on this appeal is whether the trial court erred in allowing the state to bring before the jury evidence implicating the defendant in other crimes. After a trial to a jury, the defendant, John Graham, was convicted of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3), burglary in the first degree in violation of General Statutes §§ 53a-101 (a) (1) and 53a-8, larceny in the second degree in violation of General Statutes § 53a-123 (a) (2), and unlawful restraint in the first degree in violation of General Statutes §§ 53a-95 and 53a-8. He was subsequently sentenced to an effective prison term of thirty years.

On appeal, the defendant claims: (1) that the trial court erred in allowing the state to introduce evidence of his involvement in other robberies; (2) that the state should not have been permitted to impeach its own witness; (3) that the admission of certain pictures and the corresponding remarks of the prosecutor denied him his right to a fair trial; (4) that a rope seized in contravention of his rights under the fourth and fourteenth amendments should have been excluded; and (5) that the trial court should have dismissed the charges

against him on the basis that he was illegally arrested. We find error on the first of these claims and we accordingly vacate the judgment and remand the case for a new trial. We will consider the remaining claims only insofar as they may affect a subsequent retrial.

The jury could reasonably have found that on February 5, 1983, two masked men robbed the Medi Mart Pharmacy on the Boston Post Road in Waterford. The two men were armed and stole cash and store merchandise including almost one hundred wristwatches. The defendant and another man, Willie Thompson, were later arrested and charged with various crimes in connection with the robbery.

## I

The defendant's first claim is that the trial court abused its discretion and unfairly prejudiced his defense in allowing evidence implicating him in other crimes to be placed before the jury. At trial, the state called Dinah McNair, Thompson's niece, as a witness. McNair had given a signed statement to the police after the robbery indicating that she had overheard the defendant and Thompson plan this and other robberies. When called to the stand, McNair denied ever having heard the defendant and Thompson plan the robbery of a Medi Mart pharmacy. The court then declared the witness "hostile" and permitted the state to impeach her testimony with the prior inconsistent statement concerning the Medi Mart robbery. The court had initially refused the state permission to impeach the witness using her statements concerning the planning of other robberies and the state had respected that ruling during direct examination. During cross-examination, however, defense counsel asked McNair: "You never heard John Graham and Willie [Thompson] discussing *any* robbery, did you?" (Emphasis added.) She responded, "No." Before engaging McNair on redirect examina-

tion, the state again requested and was then given permission to inquire as to the other robberies on the ground that the defendant had "opened the door" to impeach the witness on the point by asking the question quoted above. The state proceeded to confront the witness with the part of the statement in which she detailed how the defendant was involved in three other New London county robberies. The trial court opined that the other crimes evidence was prejudicial and not very probative, but agreed with the state that the defendant had on cross-examination opened the subject to inquiry.

The trial court is charged with the responsibility to exclude evidence where its prejudicial tendency outweighs its probative value. *State* v. *Geyer,* 194 Conn. 1, 11, 480 A.2d 489 (1984); *State* v. *Nardini,* 187 Conn. 513, 521–22, 447 A.2d 396 (1982); *State* v. *Marquez,* 160 Conn. 47, 52, 273 A.2d 689 (1970). Evidence is prejudicial "when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *United States* v. *Figueroa,* 618 F.2d 934, 943 (2d Cir. 1980). Strong reasons arise for excluding evidence of similar crimes " 'because of the inevitable pressure on lay jurors to believe that "if he did it before he probably did so this time." ' *Gordon* v. *United States,* 383 F.2d 936, 940 (D.C. Cir. 1967), cert. denied, 390 U.S. 1029, 88 S. Ct. 1421, 20 L. Ed. 2d 287 (1968). . . . 'Where the prior crime is quite similar to the offense being tried, a high degree of prejudice is created and a strong showing of probative value would be necessary to warrant admissibility.' *State* v. *Nardini,* supra, 522." *State* v. *Carter,* 189 Conn. 631, 644, 458 A.2d 379 (1983).

In this case the trial court specifically found that the evidence of the defendant's involvement in other crimes was "clearly prejudicial, and . . . not probative" but admitted the evidence for impeachment purposes

because the defendant had "put before this Jury an indication that [he] never discussed any robbery . . . . " We concur with the trial court that the evidence was prejudicial in this case because it placed before the jury details of the defendant's alleged involvement in three unrelated, though similar robberies. See *State* v. *Geyer,* supra, 15. We also agree that the information had, at best, marginal probative value in that the witness' credibility had already been impeached by the use of the inconsistent statement regarding the Medi Mart robbery. The question then becomes whether it was proper to allow the evidence on the ground that defense counsel had opened the door to its admission by inquiring as to "any robbery."

Generally, a party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject. *State* v. *Roy,* 173 Conn. 35, 50, 376 A.2d 391 (1977); McCormick, Evidence (3d Ed. 1984) §§ 32, 57. The party who initiates discussion on the issue is said to have "opened the door" to rebuttal by the opposing party. Even though the rebuttal evidence would ordinarily be inadmissible on other grounds, the court may, in its discretion, allow it where the party initiating inquiry has made unfair use of the evidence. *United States* v. *Winston,* 447 F.2d 1236, 1240–41 (D.C. Cir. 1971); *State* v. *Glenn,* 194 Conn. 483, 499, 481 A.2d 741 (1984); *State* v. *Roy,* supra; McCormick, supra, § 57. This rule "operates to prevent a defendant from successfully excluding inadmissible prosecution evidence and then selectively introducing pieces of this evidence for his own advantage, without allowing the prosecution to place the evidence in its proper context." *United States* v. *Lum,* 466 F. Sup. 328, 334 (D. Del. 1979).

"The doctrine of opening the door cannot, of course, 'be "subverted into a rule for injection of prejudice." ' *United States* v. *Lum,* [supra, 335], quoting *United*

*States* v. *Winston,* [supra, 1240]." *State* v. *Glenn,* supra. The trial court must carefully consider whether the circumstances of the case warrant further inquiry into the subject matter, and should permit it " 'only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence.' *California Ins. Co.* v. *Allen,* 235 F.2d 178, 180 (5th Cir. 1956)." *United States* v. *Winston,* supra. Thus, in making its determination, the trial court should balance the harm to the state in restricting the inquiry with the prejudice suffered by the defendant in allowing the rebuttal. Id., 1241–42; *People* v. *Arends,* 155 Cal. App. 2d 496, 509, 318 P.2d 532 (1957).

Applying these principles here, we conclude that the trial court erred in allowing the state to elicit testimony on the defendant's involvement in other robberies. As we have already noted, the introduction of the evidence greatly prejudiced the defendant and the evidence was of only marginal probative value. The introduction of the other crimes evidence was not essential to cure the unfairness, if any, that the state may have suffered by the defense counsel's limited inquiry into the other robberies. The trial court therefore abused its discretion in failing to limit the state's impeachment of McNair on redirect examination. Because the evidence was of a highly prejudicial character in that it left with the jury the knowledge that the defendant also may have committed three similar robberies, we cannot say that the court's error was harmless and we must remand the case for a new trial. See *State* v. *Carter,* supra.

## II

The defendant also claims that the state should not have been permitted to impeach McNair at all. The defendant argues that the state was aware that McNair would repudiate her prior statement and, as a result, lacked the "surprise" necessary to impeach its own wit-

ness. See *State* v. *Mitchell,* 169 Conn. 161, 164–65, 362 A.2d 808 (1975). The claim gives us the opportunity to re-evaluate our rules governing the right of a party to impeach his own witness.

At common law in this state and most jurisdictions, a party presenting a witness was generally not allowed to discredit or impeach the witness. *State* v. *Mitchell,* supra, 164; *State* v. *Jones,* 166 Conn. 620, 622, 353 A.2d 764 (1974); *Delfino* v. *Warners Motor Express,* 142 Conn. 301, 307, 114 A.2d 205 (1955); *Schmeltz* v. *Tracy,* 119 Conn. 492, 498, 177 A. 520 (1935); *Carney* v. *Hennessey,* 77 Conn. 577, 586, 60 A. 129 (1905); *Carpenter's Appeal,* 74 Conn. 431, 435, 51 A. 126 (1902); see generally 3A Wigmore, Evidence (Chadbourn Rev. 1970) § 896; Tait & LaPlante, Handbook of Connecticut Evidence §§ 7.12 (b) (2), 7.18 (b). Over the years, we have created exceptions to the rule and have permitted impeachment where the party was "surprised" by the testimony of the witness; *State* v. *Roberson,* 173 Conn. 97, 99, 376 A.2d 1089 (1977); *State* v. *Mitchell,* supra, 165; *State* v. *Jones,* supra; *Gondek* v. *Pliska,* 135 Conn. 610, 616–17, 67 A.2d 552 (1949); *Sandora* v. *Times Co.,* 113 Conn. 574, 585, 155 A. 819 (1931); *State* v. *Gargano,* 99 Conn. 103, 113, 121 A. 657 (1923); where the witness was "adverse or hostile"; *Liebman* v. *Society of Our Lady of Mount St. Carmel, Inc.,* 151 Conn. 582, 588, 200 A.2d 721 (1964); *Delfino* v. *Warners Motor Express,* supra; *Schmeltz* v. *Tracy,* supra; or where the witness has made prior inconsistent statements, even though surprise in the full sense was lacking. *State* v. *Shipman,* 195 Conn. 160, 164–65, 486 A.2d 1130 (1985); *State* v. *Roberson,* supra, 100; *Liebman* v. *Society of Our Lady of Mount St. Carmel, Inc.,* supra, 589.[1]

---

[1] The common law rule has also been modified in part by statute. General Statutes § 52-178 grants parties to civil proceedings the power to examine opposing parties "to the same extent as an adverse witness." See *Fasanelli* v. *Terzo,* 150 Conn. 349, 358–59, 189 A.2d 500 (1963).

Historically, the rationale behind the rule was "first, that the party by calling the witness to testify vouches for the trustworthiness of the witness, and second, that the power to impeach is the power to coerce the witness to testify as desired, under the implied threat of blasting the character of the witness if the witness does not." McCormick, supra, § 38. These reasons have become discredited and are generally thought no longer to justify the restrictions imposed on the parties. See *Lipinski* v. *New York,* 557 F.2d 289, 293 (2d Cir. 1977), cert. denied, 434 U.S. 1074, 98 S. Ct. 1262, 55 L. Ed. 2d 779 (1978); *Plawecki* v. *Angelo Tomasso, Inc.,* 1 Conn. App. 48, 52, 467 A.2d 944 (1983), cert. denied, 192 Conn. 801, 470 A.2d 1218 (1984); McCormick, supra; Wigmore, supra, §§ 897 through 899; 3 Weinstein & Berger, Evidence ¶ 607 [01]. For example, the United States Supreme Court has declared: "Whatever validity the 'voucher' rule may have once enjoyed . . . it bears little present relationship to the realities of the criminal process. It might have been logical for the early common law to require a party to vouch for the credibility of witnesses he brought before the jury to affirm his veracity. Having selected them especially for that purpose, the party might reasonably be expected to stand firmly behind their testimony. But in modern criminal trials, [parties] are rarely able to select their witnesses: they must take them where they find them." *Chambers* v. *Mississippi,* 410 U.S. 284, 296, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973).

This criticism has prompted the federal courts to abandon the rule altogether and to permit "[t]he credibility of a witness [to] be attacked by any party, including the party calling him." Fed. R. Evid., rule 607. In adopting the change, the Advisory Committee on the Proposed Rules of Evidence noted: "The traditional rule against impeaching one's own witness is abandoned as based on false premises. A party does not hold

out his witnesses as worthy of belief, since he rarely has a free choice in selecting them. Denial of the right leaves the party at the mercy of the witness and the adversary." At least thirty-three states have either judicially or legislatively adopted rules which are substantially similar to or produce the same result as federal rule 607. See, e.g., Ala. R. Evid., rule 607; Cal. Evid. Code § 785; Me. Evid. § 607; Mass. Gen. Laws Ann., ch. 233, § 23; *Davis* v. *State,* 249 Ga. 309, 313–14, 290 S.E.2d 273 (1982); see generally Wigmore, supra, § 905 n.6; 1 Weinstein & Berger, Evidence, State Adaptations of the Federal Rules of Evidence (1985 Sup.) pp. T-109 through T-118.

We are persuaded by the weight of authority that there is no longer justification for the common law rule prohibiting a party from impeaching his own witness. Witnesses do not "belong" to the party who called them; *Gervais* v. *Foehrenbach,* 149 Conn. 461, 463, 181 A.2d 253 (1962); and a party no longer vouches for the credibility of his own witness. In many situations a party may have to call a particular witness to the stand even though the testimony will not be completely favorable. If the unfavorable testimony is inaccurate and impeachment is not allowed, the inaccuracies will go unexposed and the truthfinding function of our trial system will be hindered. See *Fox* v. *Schaefer,* 131 Conn. 439, 449, 41 A.2d 46 (1944). We therefore hold that the credibility of a witness may be impeached by the party calling her without a showing of surprise, hostility or adversity. A party may impeach his own witness in the same manner as an opposing party's witness and may demonstrate the witness' bias or bad character for veracity and may impeach the witness using prior inconsistent statements. Thus, on remand, if McNair is again called as a witness by the state, the trial court may, within its discretion, allow the state to impeach her credibility.

By our holding, we do not mean to intimate that a state's attorney enjoys unfettered discretion in calling a witness and impeaching her credibility by use of inconsistent statements. The prosecution may not use a prior inconsistent statement under the guise of impeachment for the primary purpose of placing before the jury evidence which is admissible only for credibility purposes in hope that the jury will use it substantively. *United States* v. *Hogan,* 763 F.2d 697, 703 (5th Cir. 1985); *United States* v. *Webster,* 734 F.2d 1191, 1192 (7th Cir. 1984); *United States* v. *Crouch,* 731 F.2d 621, 623–24 (9th Cir. 1984); *United States* v. *Miller,* 664 F.2d 94, 97 (5th Cir. 1981), cert. denied, 459 U.S. 854, 103 S. Ct. 121, 74 L. Ed. 2d 106 (1982); *United States* v. *Morlang,* 531 F.2d 183, 189 (4th Cir. 1975); *United States* v. *Coppola,* 479 F.2d 1153, 1157–58 (10th Cir. 1973); *State* v. *Farley,* 225 Kan. 127, 129–32, 587 P.2d 337 (1978). Consequently, assuming that McNair repudiates her prior statement at retrial, if the primary purpose of calling the witness is to impeach her, and the state introduces the prior inconsistent statement in hope that the jury will use it substantively, then impeachment would become a subterfuge and the court should not permit it. *United States* v. *Hogan,* supra; *United States* v. *Miller,* supra.

## III

The defendant's third claim is that he is entitled to a new trial on the basis of certain remarks made by the prosecutor and the admission of evidence which unfairly prejudiced the defense. The circumstances surrounding this claim are rather bizarre. During the trial the state subpoenaed the defendant's alleged accomplice, Thompson, to be identified. Thompson was in custody at the time and evidently did not want to cooperate with the court. He had been in a fight in his cell the day before, his face was bloodied and he came into court with a towel draped over his head. He was asked to

remove the towel but he refused. In order to identify the witness, the prosecutor stated in the presence of the jury that "I want the record to indicate that I have subpoenaed . . . Willie Thompson, and that this is the individual who has responded . . . . " The state also introduced pictures of the witness resembling mug shots in order to establish identity. The defendant claims that the prosecutor's remarks and the pictures indicated to the jury that Thompson had been convicted of being involved in the robbery and that the defendant was therefore also guilty. We conclude that these events are unlikely to recur and we therefore do not address this claim.

IV

The defendant also challenges the admissibility of the rope found in his car. He argues that the rope should be suppressed on the grounds that it was the "fruit" of an unlawful arrest and search.

On the evening of February 7, 1983, two Waterford police officers went to the defendant's home and searched the premises pursuant to a "search and seizure warrant." Although the police did not find any of the stolen property anticipated, the defendant was arrested at that time. While they were leaving the premises, the officers saw the defendant's car across the street parked in a lot accessible to the public. They walked over to the car and looked into the rear seat with the aid of a flashlight. On the seat they noticed a rope which matched the description of the one used in the robbery. On the basis of this observation, they obtained a warrant and returned later to seize the rope.

The defendant claims that his arrest was unlawful because it was made without an arrest warrant and without probable cause. From this, he argues that the rope was the "fruit" of an illegal arrest and was therefore inadmissible. In *Wong Sun* v. *United States,* 371

U.S. 471, 488, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963), the United States Supreme Court held that evidence should be excluded on fourth amendment grounds where, " 'granting establishment of the primary illegality, the evidence . . . has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " Even if we were to assume, without deciding, that the arrest of the defendant was illegal, we cannot agree with the defendant that the rope is inadmissible. The plain view "search" of the car was wholly unconnected with the arrest other than by the fact that it occurred shortly thereafter. The arrest did not generate a confession leading the police to the rope in the car; cf. *Brown* v. *Illinois,* 422 U.S. 590, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975); nor did the search of the car take place "incident to arrest." Cf. *Chimel* v. *California,* 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969); see generally 3 LaFave, Search and Seizure § 11.4 (d). In fact, it is entirely plausible that the police would have looked into the car even if they had not arrested the defendant. We conclude, therefore, that the rope was not the "fruit" of an allegedly illegal arrest.

The defendant further contends that the rope is inadmissible because it was found during an illegal "search" of his car. He argues that the police action looking into the car with a flashlight constituted an unreasonable search and that the subsequent seizure of the rope was thereby rendered illegal. It is well established, however, that if a police officer is in a public area and uses a flashlight to peer into a vehicle through a window, his action does not constitute a "search" and, as a result, is not considered violative of the car owner's fourth amendment rights. *Texas* v. *Brown,* 460 U.S. 730, 739–40, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983); *United States* v. *Chesher,* 678 F.2d 1353, 1356–57 (9th Cir. 1982); *United States* v. *Ocampo,* 650 F.2d 421, 427 (2d Cir.

1981); see generally 1 LaFave, supra, § 2.2 (b). The Waterford police, therefore, did not violate the defendant's constitutional rights by looking into his car. They obtained a warrant before searching the car and the rope was properly seized. See *Coolidge* v. *New Hampshire,* 403 U.S. 443, 466, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971); *State* v. *Federici,* 179 Conn. 46, 56, 425 A.2d 916 (1979).

## V

The defendant's remaining claim that he is entitled to a dismissal of the charges against him on the basis that he was arrested illegally cannot succeed in light of our recent decision in *State* v. *Fleming,* 198 Conn. 255, 502 A.2d 886 (1986). In *Fleming* we held that the illegality of an arrest does not per se invalidate a subsequent conviction. Id., 259. If the defendant raises the issue again on retrial, in order to prevail on a motion to dismiss, he would have to show that the fairness of the subsequent prosecution was impaired by the allegedly illegal arrest. Id., 263.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other justices concurred.