MAXWELL, J.,
specially concurring:
¶ 26. Justice Armis Hawkins, writing for the Mississippi Supreme Court in Wilkins, held that a party must still show surprise or unexpected hostility before impeaching its own witness, despite Mississippi’s then-recent adoption of Rule 607, which does not require either of these express showings. See Wilkins v. State, 603 So.2d 309, 322 (Miss.1992).. Because our supreme court continues to- adhere to these pre-Rule 607 requirements, I am compelled to agree with the majority that we are bound by Wilkins and must reverse James’s conviction.
¶ 27. But I write separately to point out that — while the supreme court in Wilkins emphasized that “since the adoption of the Mississippi Rules of Evidence” it has “followed the rationale of the federal courts” and prohibited parties from impeaching *702 their own witnesses absent surprise or unexpected hostility, Wilkins, 603 So.2d at 322— this particular approach is not how federal courts have interpreted Rule 607. See Walker v. State, 144 Md.App. 505, 798 A.2d 1219, 1231 (2002) overruled on other grounds (contrasting Mississippi with the score of federal and state jurisdictions that have held that Rule 607 does not require surprise or unexpected hostility).
¶ 28. Under Federal Rule of Evidence 607, “[a]ny party, including the party that called the witness, may attack the witness’s credibility.” This rule is almost identical to Mississippi’s counterpart, which provides that “[t]he credibility of a witness may be attacked by any party, including the party calling him.” M.R.E. 607. The reason these rules make no mention of either a showing of surprise or hostility is simple — these exceptions to the prohibition against attacking one’s own witness were no longer necessary after the Federal Rules of Evidence retreated from the common-law “voucher rule.”
¶ 29. Federal Rule 607 was promulgated to replace the common-law “voucher rule.” See Chambers v. Mississippi, 410 U.S. 284, 296 n. 9, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (“The ‘voucher’ rule has been rejected altogether by the newly proposed Federal Rules of Evidence, Rule 607[.]”). The “voucher rule” was based on the old idea that a party, by calling a witness on its behalf, “vouched” for the witness’s credibility. See Moffett v. State, 456 So.2d 714, 718 (Miss.1984). Thus, the party was prohibited from attacking its own witness’s credibility through impeachment evidence. Id. As this rule started to become disfavored, courts came up with exceptions to chip away at the “voucher rule.” For example, if the party could show it was “surprised” by the testimony of its witness or that the witness was “unexpectedly hostile,” then it could get around the voucher rule and impeach its own witness. See id. (noting that the voucher rule was no longer in favor and was “riddled with exceptions”).
¶ 30. Rule 607 “was predicated on the modern reality that ‘a party does not hold out his witnesses as worthy of belief, since he rarely has a free choice in selecting them.’ ” Walker, 798 A.2d at 1231 (quoting F.R.E. 607, Advisory Committee Notes); see Chambers, 410 U.S. at 296, 93 S.Ct. 1038 (criticizing Mississippi’s common-law voucher rule because “in modern criminal trials, defendants are rarely able to select their witnesses: they must take them where they find them”).
¶ 31. In light of this reality, under both the federal and state rules, any party, including the sponsoring party, may attack the witness’s credibility. F.R.E. 607; M.R.E. 607. And because Rule 607 did away with the voucher rule, federal courts have recognized Rule 607 also did away with the exceptions used to get around the voucher rule. See Walker, 798 A.2d at 1231 (citing United States v. Ienco, 92 F.3d 564, 568 (7th Cir.1996); United States v. Kane, 944 F.2d 1406, 1412 (7th Cir.1991); United States v. Webster, 734 F.2d 1191, 1193 (7th Cir.1984); Robinson v. Watts Detective Agency, Inc., 685 F.2d 729, 740 (1st Cir.1982); United States v. DeLillo, 620 F.2d 939, 946-47 (2d Cir.1980); United States v. Dennis, 625 F.2d 782, 795 n. 6 (8th Cir.1980); Scholz Homes, Inc. v. Wallace, 590 F.2d 860, 863 (10th Cir.1979); United States v. Palacios, 556 F.2d 1359, 1363 (5th Cir.1977); United States v. Long Soldier, 562 F.2d 601, 605 n. 3 (8th Cir.1977)).
¶ 32. Following the adoption of Rule 607, federal courts shifted from honing on surprise to focusing on the actual purpose for impeachment, asking whether the government is abusing Rule 607 by calling a witness who otherwise has no useful, ad *703 missible evidence for- the purpose of admitting prior inconsistent testimony suggesting the defendant’s guilt. See Kane, 944 F.2d at 1411 (citing Webster, 734 F.2d at 1192; United States v. Morlang, 531 F.2d 183, 190 (4th Cir.1975)). So interpreting Rule 607 to have done away with the voucher rule and its exceptions of surprise and unexpected hostility does not ignore Justice Hawkins’s concerns in Wilkins— that the abolishment of the voucher rule may lead to the inappropriate use of inadmissible hearsay evidence under the guise of impeachment. Compare Webster, 734 F.2d at 1193, with Wilkins, 603 So.2d at 321-22. Indeed, while Rule 607 does not require surprise, it also does not permit subterfuge. See United States v. Miller, 664 F.2d 94, 97 (5th Cir.1981) (“Of course, the prosecutor may not use such a statement under the guise of impeachment for the primary purpose of placing before the jury substantive evidence which is not otherwise admissible:”). That is why the federal courts, when faced with the government seeking to impeach its own witness, look for subterfuge — the abuse of Rule 607 — and not surprise — the exception to the abolished voucher rule. See, e.g., DeLillo, 620 F.2d at 946-47.
¶ 33. The Wilkins court claimed it was following “the rationale of the federal courts.” Wilkins, 603 So.2d at 322. But by still mandating surprise or unexpected hostility, Mississippi actually clings to the old disfavored mechanical approach that in fact led to the creation of Rule 607. See Walker, 798 A.2d at 1232 (citing 4 Joseph M. McLaughlin, Weinstein’s Federal Evidence § 607.02[2][e] (2d ed.1997)). Judge Posner, on behalf of the United States Court of Appeals for the Seventh Circuit, summed up why the more flexible approach under Rule 403’s balancing test is preferable:
Webster [ (the defendant) ] urges us ... to go beyond the good-faith standard and hold that the government may not impeach a witness with his prior inconsistent statements unless it is surprised and harmed by the witness’s testimony. But we think it would be a mistake to graft such a requirement to Rule 607, even if such a graft would be within the power of judicial interpretation of the rule. Suppose the government called an adverse witness that it thought would give evidence both helpful and harmful to it, but it also thought that the harmful aspect could be nullified by introducing the witness’s prior inconsistent statement. As there would be no element of surprise, ... the introduction of the pri- or statements [would be forbidden]; yet we are at a loss to understand why the government should be put to the choice between the Scylla of forgoing impeachment and the Charybdis of not calling at all a witness from whom it expects to elicit genuinely helpful evidence.
Webster, 734 F.2d at 1193.
, ¶ 34. Mississippi’s approach places parties in both civil and criminal cases between the very “rock and a hard place” our federal courts have rejected. By requiring surprise or unexpected hostility, Mississippi harkens back to the former hard-line position that a party cannot legitimately impeach one of its witnesses with an un-sworn ' statement if, prior to calling the witness, it suspects the witness may go south. But the very reason Rule 607 was adopted was the modern recognition that neither the State, nor most any party, has the luxury of picking its fact witnesses and should not have to vouch for everything they testify about.
¶35. The reality is that our lawyers and judges are all too aware that a witness who initially came forward with helpful evidence during an investigation may for various reasons — threats, intimidation, *704 close relationship, and a host of other conceivable reasons that pop up in criminal and civil cases — make a conscious decision to not be quite so honest or forthcoming once on the witness stand. But that should not mean — and does not mean in most courts — that absent a showing of surprise or unexpected hostility, if the party decides to call that witness, and the witness does indeed begin- to give harmful evidence that must be impeached, the prosecutor, criminal defendant, plaintiff, or civil defendant, as a rule, was trying to subvert the rules of evidence.
¶ 36. Simply put, lack of surprise does not always equal subterfuge. And the mountain of federal and state authority from other courts undermines the suggestion that requiring surprise or unexpected hostility is the only workable method of ensuring impeachment evidence is properly admitted. See Wilkins, 603 So.2d at 321.
¶ 37. As Judge Posner noted in Webster, “[t]he good-faith standard strikes a better balance.” Webster, 734 F.2d at 1193. Under Federal Rule of Evidence 403, and its nearly identical counterpart, Mississippi Rule of Evidence 403, the defendant can always “argue that the probative value of the evidence offered to impeach the witness is clearly outweighed by the prejudicial impact it might have on the jury, because the jury would have difficulty confining use of the evidence to impeachment.” Webster, 734 F.2d at 1193.
1138. For these various reasons, our modern rules of evidence sufficiently protect against inadmissible hearsay testimony being admitted under the ruse of “impeachment.” So there is really no reason for Mississippi to continue to graft on to Rule 607 the requirements of surprise or unexpected hostility — exceptions meant to soften the very common — law rule Rule 607 did away with.[2]
¶ 39. Instead of looking for surprise or unexpected hostility, perhaps Mississippi’s Rule 607 analysis should focus on (1) whether the primary purpose of the State’s impeachment was indeed impeachment, and (2) whether the probative value of the impeachment evidence was outweighed by the unfair prejudice that may result if the jury were to use the impeachment evidence as substantive evidence. But with this said, as a member of our intermediate appellate court, I am certainly cognizant of my duty to apply Rule 607 as interpreted by the Mississippi Supreme *705 Court. And because our supreme court still says that the State cannot impeach its witness without showing either surprise or unexpected hostility, I concur with the majority opinion.
JAMES, J., JOINS THIS OPINION. ROBERTS, J., JOINS THIS OPINION IN PART.

. In holding that Maryland’s Rule 607 does not require a party to show surprise or unexpected hostility in order to impeach its own witness, Maryland's Court of Special Appeals relied on the following state cases that "have also refused to engraft the requirement of surprise”: Burgin v. State, 747 So.2d 916, 919 (Ala.Crim.App.1999); Eubanks v. State, 516 P.2d 726, 728 (Alaska 1973); State v. Acree, 121 Ariz. 94, 588 P.2d 836, 838 (1978); State v. Graham, 200 Conn. 9, 509 A.2d 493, 498 (1986); Morton v. State, 689 So.2d 259, 262 (Fla.1997), overruled on other grounds by Rodriguez v. State, 753 So.2d 29 (Fla.2000); State v. Gonzalez, 120 Ill.App.3d 1029, 76 Ill.Dec. 393, 458 N.E.2d 1047, 1055 (1983); State v. Farley, 225 Kan. 127, 587 P.2d 337, 341 (1978); Thurman v. State, 975 S.W.2d 888, 893 (Ky.1998); State v. Cousin, 710 So.2d 1065, 1070 (La.1998); State v. Dodge, 397 A.2d 588, 592 n. 6 (Me.1979); Smith v. State, 766 P.2d 1007, 1009 (Okla.Crim.App.1988); State v. Warren, 88 Cr.App. 462, 745 P.2d 822, 824 (1987); State v. Kimbell, 563 Pa. 256, 759 A.2d 1273, 1279 (2000); State v. Collins, 186 W.Va. 1, 409 S.E.2d 181, 188 (1990); State v. Hancock, 109 Wash.2d 760, 748 P.2d 611, 612 (1988). Walker, 798 A.2d at 1231, overruled on other grounds by Walker v. State, 373 Md. 360, 818 A.2d 1078, 1089 (2003) ("We hold that the trial court and Court of Special Appeals properly found that proof of surprise is not a necessary prerequisite under Md. Rule 5-607 analysis.”).
Only Mississippi was cited as "still" requiring surprise or unexpected hostility. Walker, 798 A.2d at 1231 (citing Wilkins, 603 So.2d at 322).