STATE OF CONNECTICUT *v.* FRANK X. LO SACCO
(9725)

DUPONT, C. J., FOTI and LANDAU, Js.

Argued September 24, 1991—decision released January 28, 1992

*Frank X. Lo Sacco,* pro se, the appellant (defendant).

*Carolyn K. Longstreth,* assistant state's attorney, with whom were *Russell Zentner,* deputy assistant state's attorney, and, on the brief, *John T. Redway,* state's attorney, for the appellee (state).

FOTI, J. After a trial by jury, the defendant was convicted of assault in the third degree in violation of Gen-

eral Statutes § 53a-61. The defendant appeals his conviction, claiming that the trial court (1) improperly allowed into evidence the fact that a jury had previously acquitted the victim of stabbing the defendant during the incident in question, (2) restricted the defendant's cross-examination of a state's witness in violation of his sixth amendment right of confrontation, (3) improperly restricted the defendant's cross-examination of a state's witness as to criminal charges pending against the witness, and (4) mistakenly allowed into evidence opinion testimony as to the ultimate issue of fact. We agree with the defendant's first claim and reverse the judgment of the trial court.

The following facts are relevant to this appeal. At trial, the victim of the alleged assault, James Smith, testified as follows. On Friday, September 1, 1989, he was living in the home of the defendant's former girl friend and her son, who is also the defendant's son. On Friday evening and early Saturday morning, Smith received several harassing phone calls from the defendant. On Saturday afternoon, the defendant drove to Smith's residence and approached the front door. Smith opened the door and informed the defendant that the defendant's former girl friend and her son were away for the weekend. Smith then closed and locked the front door. He was fearful of the defendant, especially because at that time he was in ill health and had sustained tremendous weight loss due to chemotherapy treatment. The defendant then pounded on the front door and shouted obscenities. At this time, Smith contemplated phoning the police, but decided against it. Instead, Smith attempted to leave the scene by car.

In the garage, Smith fumbled with his car keys in an effort to unlock his car. The defendant approached him and pinned him against the car, bruising his left leg. The defendant then threw Smith onto the hood of the car. Smith rolled off the hood and landed on the

ground. Smith then pulled a pocketknife from his pocket because he was afraid of the defendant. As Smith backed toward the house, the defendant charged at him. The defendant raised his leg as if to kick Smith. Smith then stabbed the defendant in the chest just above the left nipple. The defendant began to bleed and fell backward onto the ground. As a result of his fall, the defendant's glasses came off, and Smith retrieved them. Smith immediately went into the house and phoned the police, informing the dispatcher that he had just stabbed someone. When the police arrived, the defendant was gone, having driven himself to the hospital. As a result of the stabbing, Smith was arrested and charged with assault in the first degree. He stood trial before a jury and was acquitted of the charge.

At the defendant's trial on the charge of assault in the third degree, the state introduced an audio tape, recorded at the hospital immediately after the stabbing, in which the defendant told the police that Smith had stabbed him without provocation.

Before the defendant's trial, the defendant filed a motion in limine, seeking to preclude the state from introducing evidence of Smith's acquittal. In granting the defendant's unopposed motion, the trial court admonished both the state's attorney and the defendant: "Just advise [the witnesses] before they start that if they . . . say anything about a prior proceeding, that's as much as they can say. They cannot say the result of the prior proceeding. In other words . . . during the course of examination or cross-examination someone may be confronted with a transcript of the prior case, and what should be said in that case is, 'in a prior proceeding, did you say—'Don't identify the name of the case . . . and certainly don't indicate what happened in the case . . . we'll make sure that we'll refer to it as 'at a prior proceeding, did you say

such and such.' Don't indicate the nature of the case, the name of the case, or what happened in the case . . . . That applies to both sides."

On direct examination, the state's attorney elicited the following testimony from Smith:

"Smith: And I went out and there was a young officer who had his vehicle parallel parked in the street. And he began to question me . . . . I told them that I was the one that had called the police . . . . And then Officer Clayton read me rights and put me in handcuffs.

"State: What did he do with you? Did he take you anywhere?

"Smith: He took me to the Middletown Police Department.

"State: What happened at the Middletown Police Department?

"Smith: We spent about an hour and a half to two hours while he transcribed a statement of what occurred . . . . And there was a sergeant that came in, and . . . told Officer Clayton how I was to be released and what my bond was to be."

During cross-examination, the defendant, who represented himself, questioned Smith about the stabbing as follows:

"Defendant: Sir, you were arrested, I think you testified, on September 2, 1989, correct?

[Objection by the state]

"Defendant: Did you testify, Mr. Smith, that your rights were read to you, you were placed in handcuffs on September 2, 1989, by Officer Clayton, this morning? Didn't you testify to that?

"Smith: Yes, sir I did.

"Defendant: And were you taken to the police station and arrested for stabbing me?

"Smith: Yes.

"Defendant: And you were arrested and charged with stabbing me right next to my left nipple?

[Sidebar taken]

"Defendant: You were arrested for stabbing me right next to my left nipple, isn't that so?

"Smith: Yes, sir."

On redirect examination of Smith, the state attempted to introduce evidence of Smith's acquittal. The defendant objected, but the court overruled the objection, finding that the defendant had opened the door to the issue with his questions on cross-examination.[1]

The court permitted Smith to testify on redirect as follows:

"State: Mr. Smith, there was testimony on cross-examination that you were arrested for assault; what happened with that arrest?

"Smith: It went to jury trial.

"State: And what happened at jury trial?

"Smith: I was acquitted."

We find that the trial court improperly allowed Smith to testify to his acquittal in violation of the motion in limine. We do not find that the defendant opened the

---

[1] Neither the state nor the defendant asked for a limiting instruction regarding the purpose for which the jury should use the evidence of Smith's acquittal.

door with his cross-examination. Furthermore, this error requires a new trial because of the highly prejudicial nature of the evidence.

The purpose of a motion in limine is to "exclude irrelevant, inadmissible and prejudicial evidence from trial . . . ." *State* v. *Bell,* 188 Conn. 406, 414, 450 A.2d 356 (1982). A trial court should exclude evidence if it would create undue prejudice and threaten an injustice if admitted. *Chouinard* v. *Marjani,* 21 Conn. App. 572, 576, 575 A.2d 238 (1990).

It is undisputed that the trial court properly granted the defendant's motion in limine to exclude evidence of Smith's acquittal because the evidence was highly prejudicial to the defendant's case. The court's order in regard to the motion in limine precluded either side from identifying the name of the prior proceeding, and from revealing the nature or the result of the case.

During Smith's direct examination, Smith testified that when the police arrived after the stabbing, the police informed him of his rights, placed him in handcuffs, took him to the police station, took a statement from him, and released him on bond. On cross-examination, the defendant asked Smith if he had been arrested and charged with stabbing the defendant. Smith answered in the affirmative. The issue is whether the introduction of this evidence of the arrest violated the motion in limine and opened the door to Smith's testimony on redirect that he had been tried and acquitted of the stabbing.

The state contends that the defendant's questioning on cross-examination opened the door to evidence inadmissible by the state on direct. The state maintains that because there was no mention of "arrest" or "charges" during direct examination, the jury was not aware that Smith had been arrested until the defendant brought

it out on cross-examination.[2] The state argues this point despite the fact that Smith had testified to being handcuffed, informed of his constitutional rights, transported to the police station, questioned and released on bond. Clearly, on these facts, a juror using common sense would draw the conclusion that Smith had been arrested for the stabbing. In reaching a decision, jurors are to use common sense and draw reasonable inferences from the evidence presented. *State* v. *Montanez*, 219 Conn. 16, 23, 592 A.2d 149 (1991). Thus, even though the defendant mentioned the word "arrest" for the first time on cross-examination, the defendant did not reveal anything that the jurors did not already know.

It is important to point out that after trial, in denying the defendant's motion to set aside the judgment, the court told the defendant that he had "opened the door" to the challenged line of questioning by asking whether Smith had been arrested for assault in the first degree. The court then stated, "If you had asked . . . 'were you arrested for stabbing me?' I think that would have gotten by because the jury already knew that." Our review of the record indicates that, in fact, the defendant never referred to "assault in the first degree" in his questioning. Rather, the defendant asked Smith only if he had been arrested and charged with "the stabbing."

In allowing Smith to testify to his acquittal on redirect, the trial court inappropriately applied the doctrine of opening the door. The general rule is that a party who initiates discussion about a certain topic during the examination of a witness cannot later object

---

[2] In its brief, the state contends: "The state's direct simply presented Smith's version of the altercation and its immediate aftermath, which included, incidentally and in neutral terms, the fact of his going to the police station in handcuffs, receiving the warnings of constitutional rights and giving a statement. There was no mention of 'arrest' or 'charges.' "

to the opposing party's questioning the witness on the same topic. *State* v. *Graham,* 200 Conn. 9, 13, 509 A.2d 493 (1986); *State* v. *Paulino,* 26 Conn. App. 86, 90–91, 598 A.2d 666 (1991). "The party who initiates discussion on the issue is said to have 'opened the door' to rebuttal by the opposing party." *State* v. *Graham,* supra. The trial court has discretion to permit the admission of rebuttal evidence where the initiating party has used the evidence unfairly. Id. The court, however, should allow rebuttal evidence only to the extent necessary to eliminate any unfair prejudice resulting from the original evidence. Id., 14. "[I]n making its determination, the trial court should balance the harm to the state in restricting the inquiry with the prejudice suffered by the defendant in allowing the rebuttal." Id.

We conclude that the trial court abused its discretion in allowing Smith to testify to his acquittal. Because the jury was already aware of Smith's arrest, the defendant's question, "Were you arrested and charged with stabbing me?" was not unfair and did not prejudice the state's case in such a way that the state needed to clarify it. Conversely, the introduction of Smith's acquittal greatly prejudiced the defendant's case. A juror would likely reason that because another jury refused to hold Smith accountable for the stabbing, the defendant must have been the aggressor in the incident and Smith merely acted in self-defense.

The state maintains that even if the trial court improperly allowed Smith to testify to his acquittal on redirect, the error was harmless. The test for harmful error is whether it is more probable than not that the result of the trial would have been different without the introduction of the evidence. *State* v. *Belle,* 215 Conn. 257, 268, 576 A.2d 139 (1990). " 'Any improper evidence that may have a tendency to . . . influence the judgment, of the jury, cannot be considered as

harmless.' " *State* v. *Loughlin,* 149 Conn. 21, 26, 175 A.2d 367 (1961); *State* v. *Sierra,* 213 Conn. 422, 437, 568 A.2d 448 (1990). Where the alleged error is not of constitutional magnitude, the burden rests with the defendant to establish the harm of the court's error. *State* v. *Sierra,* supra, 436. We conclude that the defendant has met this burden.

From the testimony presented at trial, the jury was aware that there was an altercation between Smith and the defendant that resulted in Smith's stabbing the defendant. The jury also knew that Smith was arrested for the stabbing. There was conflicting evidence presented at trial, however, as to who was the aggressor in the incident. Smith's version clearly implicated the defendant as the aggressor. In the tape-recorded conversation between the defendant and the police immediately following the incident, the defendant said that Smith stabbed him without provocation. The jurors' decision whether to convict the defendant, therefore, turned largely on their assessment of Smith's credibility. Once the court allowed into evidence the fact that another jury had acquitted Smith, however, it is more probable than not that this jury reasoned that the defendant was the aggressor and that Smith stabbed him in self-defense. Evidence of Smith's acquittal buttressed his credibility to such an extent that the jury was unlikely to doubt his version of the events. Thus, the evidence of Smith's acquittal influenced the judgment of the jury and affected the outcome of the trial.[3]

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

---

[3] As a result of our conclusion, we find it unnecessary to address the defendant's remaining claims.