Frank X. LoSACCO, Plaintiff,

v.

CITY OF MIDDLETOWN, et al., Defendants.

No. 2:89CV00825 (AHN).

United States District Court, D. Connecticut.

Feb. 22, 1993.

NEVAS, District Judge.

After review and absent objection, the Magistrate Judge's Recommended Ruling is approved, adopted and ratified.

SO ORDERED.

## MAGISTRATE'S OPINION

SMITH, United States Magistrate Judge.

The *pro se* plaintiff brought this civil rights action against the defendant town, its mayor, and several of its police officers claiming that he was falsely arrested and that the defendants caused false and defamatory statements to be published about him in a Middletown newspaper.[1] Shortly before the scheduled commencement of jury selection, the defendants filed the instant motion for summary judgment contending that the doctrine of qualified immunity bars suit against them. For the reasons set forth herein, the defendants' motion for summary judgment should be denied.

*Facts*

On September 2, 1989, the plaintiff was involved in an altercation with an individual named James Smith. During that incident, the plaintiff was stabbed with a knife.

Upon arriving at the scene, members of the Middletown Police Department arrested James Smith. Three days after the incident, however, officer John Chowaniec of the Middletown police department made an application for a warrant to arrest the plaintiff. In support of that application, officer Chowaniec signed a six-page sworn affidavit.

The affidavit, which allegedly was based on officer Chowaniec's personal knowledge as well as information received from other Middletown police officers, indicated that officer Chowaniec first heard of the altercation between Smith and the plaintiff at 2:57 p.m. on September 2, 1989. Upon receiving this information, Chowaniec immediately proceeded to the scene.

Once there, Chowaniec observed James Smith who had already admitted to another officer that he had stabbed the plaintiff in the chest. According to Chowaniec, however, it was Smith's contention that he had acted in self defense.

Chowaniec and his fellow officers then secured the scene. Based on information received from Smith, they found the knife with which Smith had stabbed the plaintiff in the front seat of the car in the driveway. Examination of the knife revealed blood-like fluids and what appeared to be skin particles and hair fibers.

After Smith was taken to police headquarters where he was processed on a charge of assault in the first degree and subsequently gave a voluntary statement, officer Chowaniec continued to check the scene for signs of a struggle. According to Chowaniec, he could not find any signs of blood from the

---

1. The mayor and officers are being sued in both their individual and official capacities.

knife wound but he did find what appeared to be fingerprints, scuff marks, and footprints on the hood of the car. Chowaniec spread black fingerprint powder on the car, and the marks were photographed for later use.

Chowaniec and a fellow officer then proceeded to Middlesex Hospital where, after photographing the plaintiff's wound, they interviewed the plaintiff. At that time, the plaintiff indicated that he had gone to the house where Smith was staying to pick up his son who resided there. When the plaintiff inquired of his son's whereabouts, Smith allegedly told him that his son had gone away for the weekend. Smith also threatened to call the police if the plaintiff did not leave.

According to Chowaniec's affidavit, the plaintiff then related the following scenario:

After being told that his son was not home, he sat on the steps waiting for the arrival of the police. Before the police could arrive, however, Smith exited the house through the garage and attempted to get in the car parked in the driveway. The plaintiff went up to Smith to inquire whether he had called the police. The plaintiff also wanted to talk to Smith to find out what kind of a guy he was because he had heard that Smith had slept in the same room as his son. Upon being questioned, Smith indicated that he had not called the police. Then, without provocation, Smith produced a knife and stabbed the plaintiff in the chest. The plaintiff fell, hitting his head on the ground. He then got up and drove himself to the hospital.

Chowaniec noted nothing more about his interview with the plaintiff other than the fact that the plaintiff denied having touched Smith.

Chowaniec's affidavit indicated that he also interviewed James Smith.

According to the affidavit, Smith told Chowaniec that LoSacco had harassed him for the preceding eight or nine days and wanted to have him evicted from his son's mother's residence. Smith claimed that he received about 25 telephone calls on the day of the incident from LoSacco, who asked to speak to his son and shouted obscenities at Smith. According to Smith, LoSacco knew that his son was not at home on that day, that his son spent every weekend with his aunt in New Britain, and that his son had told LoSacco that he would be away for the Labor Day weekend. Nevertheless, LoSacco came to the house asking to see his son. Smith refused to let LoSacco in and told him to go away or he would call the police. LoSacco then banged on the front door, according to Smith, screaming obscenities. Smith tried to get away in the car parked in the driveway, but LoSacco allegedly shoved Smith, who was of slight build and a cancer victim, against the car and then picked him up and threw him onto the hood. Smith claimed that he stabbed LoSacco in self-defense because he was sure that LoSacco meant to do him harm, that LoSacco had injured Smith's left leg by scraping it against the car, and that Smith feared that LoSacco was about to hit him in the groin.

*LoSacco v. City of Middletown*, 745 F.Supp. 812, 815–16 (D.Conn.1990) (Nevas, J. ruling on defendants' motion to dismiss).

After the interviews with the plaintiff and Smith, Chowaniec continued to investigate in an attempt to determine what happened. According to the affidavit, he spoke with Debra Parmalee, the mother of the plaintiff's son and a resident at the house where the incident occurred. Parmalee allegedly showed him the sneakers Smith was wearing on the day of the incident. Chowaniec indicated that he took the shoes outside and physically matched them to the footprints found on the car. He concluded that "it is positive the shoes Smith had on that day were the same as the prints left on the car." Affidavit, p. 5. With respect to the other footprints on the car, Chowaniec represented that "it is unknown if the other shoe imprints are those of LoSacco [sic] as no match has been made as of this affidavit." *Id.*

Finally, the affidavit reveals that on September 4, 1989, officer Chowaniec and detective Gervais went to the plaintiff's home to get a written statement from him. Upon being advised of his rights and being informed that Smith had filed a cross-complaint against him, the plaintiff allegedly got

upset and told the officers to leave his residence.

Based on the representations in Chowaniec's affidavit, a judge of the Connecticut Superior Court signed a warrant for the plaintiff's arrest. That warrant was executed October 25, 1989.

After his arrest, the plaintiff was convicted by a jury of his peers of the crime of assault in the third degree. Conn.Gen.Stat. § 53a–61. While the plaintiff sought to appeal his conviction, the defendants moved for summary judgment arguing that the plaintiff's claims were barred as a result of the judgment of conviction. Subsequently, the proceedings in this case were stayed pending the outcome of the plaintiff's direct appeal.

On January 28, 1992, the Connecticut Appellate Court reversed the plaintiff's conviction and ordered a new trial. *State v. LoSacco,* 26 Conn.App. 439, 602 A.2d 589 (1992). On remand, the criminal case against the plaintiff was dismissed.

Shortly thereafter, the instant case was scheduled for a jury trial at the plaintiff request. Before jury selection could begin, however, the defendants requested permission to file the instant motion for summary judgment. Over objection, the court allowed the motion to be filed.

In moving for summary judgment, the defendants contend that, based on the information available to the police at the time of the arrest, a reasonable officer would have concluded that there was probable cause to believe that the plaintiff had committed a crime. The defendants point primarily to the information contained in the affidavit in support of the arrest warrant. They also point to the trial testimony of the alleged victim which they contend confirms the facts set forth in the original affidavit.

The plaintiff asserts, however, that many of the statements in the warrant affidavit are false and that the affiant officer intentionally or recklessly failed to include other vital information in the warrant. He contends that the police did not have probable cause to arrest him.

*Discussion*

■ Before addressing the merits of the defendants' arguments, the court feels compelled to address the plaintiff's objection to the timeliness of this motion—as noted above, the motion was filed just shortly before the scheduled commencement of jury selection.[2]

While ordinarily the court would not consider a motion filed outside of the time limits set forth in the scheduling order, it is appropriate to consider the instant motion for summary judgment for several reasons. First, the motion seeks summary judgment on the issue of qualified immunity. Our courts have long noted that qualified immunity "serves not only as a defense from liability, but also to spare public officials from shouldering the burdens and expense of litigation." *Cartier v. Lussier,* 955 F.2d 841, 844 (2d Cir.1992). Because of the need to protect public officials from needless and expensive litigation, "[t]he Supreme Court has expressly encouraged the use of summary judgment when qualified immunity is raised as a defense." *Id.*

The use of summary judgment to resolve the issue of qualified immunity is not likely to prejudice the plaintiff where, as here, the defendants asserted qualified immunity as an affirmative defense in their answer. *See Stock 'In S.A. v. Swissco, Inc.,* 748 F.Supp. 23, 27 (D.D.C.1990); *Bowen v. Pan American World Airways, Inc.,* 474 F.Supp. 563, 567 (S.D.N.Y.1979) (court considered allegedly untimely Fed.R.Civ.P. 12(b)(6) motion to dismiss because defendants raised defense in answer and trial had not yet occurred); 5A Wright and Miller, *Federal Practice and Procedure,* § 1292 at 757 n. 1 (1990). Determining this issue prior to trial, if possible, is likely to reduce the possibility of jury confusion. In short, the plaintiff cannot assert any valid reason for having this matter determined at trial instead of on a motion for summary judgment.

2. While Judge Nevas seeming resolved this issue when he granted the defendants permission to file the instant motion, the plaintiff continues to assert that the defendants' motion should be denied as untimely.

■ Turning to the merits of the defendants' motion, the standard for reviewing motions for summary judgment is well-established. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56, Fed.R.Civ.P. "In deciding the motion, factual allegations backed by affidavits or other evidence made by the party opposing the motion are regarded as true, see *Burtnieks v. City of New York*, 716 F.2d 982, 983–84 (2d Cir.1983), and are viewed in the light most favorable to the non-movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 [82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962) ]." *Cartier v. Lussier, supra*, 955 F.2d at 845; *Donahue v. Windsor Locks Bd. of Fire Comm'rs.*, 834 F.2d 54, 57 (2d Cir.1987); *Diamantopolous v. Brookside Corp.*, 683 F.Supp. 322, 325 (D.Conn.1988). The moving party bears the burden of demonstrating that there are no disputed material facts and that it is entitled to judgment as a matter of law. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Once the moving party has demonstrated the absence of a genuine issue of material fact, the burden shifts to the adverse party to affirmatively, "by affidavits or . . . otherwise[,] . . . set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.; *Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). This requires the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett, supra*, 477 U.S. at 322, 106 S.Ct. at 2552. The nonmoving party may not "rely on mere speculation or conjecture as to the true nature of the facts" to resist summary judgment. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d

9, 12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

■ In this case, the defendants have raised the defense of qualified immunity. This defense shields public officials from

personal liability for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,' *Harlow v. Fitzgerald*, 457 U.S. 800, 818 [102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) ]; *see also Hurlman v. Rice*, 927 F.2d [74] at 78 [ (2d Cir.1991) ]; *Robison v. Via*, 821 F.2d 913, 920 (2d Cir.1987), or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights, *see Anderson v. Creighton*, 483 U.S. 635, 638 [107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) ]; *Malley v. Briggs*, 475 U.S. 335, 341 [106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) ]; *Hurlman v. Rice*, 927 F.2d at 78; *Calamia v. City of New York*, 879 F.2d 1025, 1035 (2d Cir.1989).

*Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir.1991).[3] When determining whether a public official is entitled to rely on the defense of qualified immunity "[a] subjective inquiry into an official's personal belief is rejected in favor of an objective analysis of what a reasonable [official] in defendant's position would believe." *Cartier v. Lussier*, 955 F.2d 841, 843 (2d Cir.1992).

■ In the context of an arrest, it is axiomatic that "[w]hen a police officer, acting in good faith, obtains a warrant and acts within its scope, he has engaged in no official misconduct. . . ." *Olson v. Tyler*, 771 F.2d 277, 281 (7th Cir.1985). A warrant, however, does not erect an impenetrable barrier to a claim of wrongful arrest. *Id.; see also Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). If a plaintiff is able to show (1) that the warrant was obtained on the basis of information that was known to be false when presented to the issuing magistrate or that the affiant officer

---

**3.** In this regard, the court notes that qualified immunity only protects public officials from suits against them in their personal capacity. *See generally Kentucky v. Graham*, 473 U.S. 159, 165–68, 105 S.Ct. 3099, 3105–3107, 87 L.Ed.2d 114 (1985). Insofar as the defendants are being sued in their official capacities, they are not entitled to rely on the defense of qualified immunity.

would have known to be false had he not recklessly disregarded the truth and (2) that the allegedly false statements were "necessary to the finding of probable cause" *Franks v. Delaware,* 438 U.S. at 155–156, 98 S.Ct. at 2676; the defendants are not entitled to the defense of qualified immunity. *Golino v. City of New Haven,* 950 F.2d at 870–71.

■ Proof of intentional or reckless omissions of material information, like false statements, may defeat the defense of qualified immunity. *Id.* at 871 ("Where an officer knows, or has reason to know, that he has materially misled a magistrate on the basis for a finding of probable cause, as where a factual omission is intended to enhance the contents of the affidavit as support for a conclusion of probable cause, the shield of qualified immunity is lost."); *see United States v. Campino,* 890 F.2d 588, 592 (2d Cir.1989), *cert. denied,* 494 U.S. 1068, 110 S.Ct. 1787, 108 L.Ed.2d 788 (1990). "[R]ecklessness may be inferred where the omitted information was critical to the probable cause determination." *Id.*

■ In this case, it is clear that the defendants have met their initial burden of showing that, on its face, the affidavit signed by officer Chowaniec established committed a crime. According to the affidavit, the statements of James Smith were supported by substantial physical evidence. Officer Chowaniec represented that he found numerous fingerprints, scuff marks, and footprints on the hood of the car where Smith was allegedly thrown. Chowaniec reported that although he was unable to determine whether any of the footprints matched the plaintiff's shoes, he was able to positively identify some of the footprints as belonging to Smith. Chowaniec also reported that Smith suffered an abrasion on his leg as a result of being thrown upon the car.

The affidavit also pointed to circumstantial evidence to support the statements of Smith. In the affidavit, Chowaniec indicated that Debra Parmalee informed him that the plaintiff had several conversations with his son on Thursday and Friday before the weekend. At the time of those phone conversations, the plaintiff's son allegedly was aware that he was going to be away for the Labor Day weekend. Despite this alleged knowledge, the plaintiff showed up at the house. Chowaniec also represented that Smith informed him that the plaintiff was under a court order not to get out of his car when he came to pick up his son.

The plaintiff apparently concedes the facial validity of the warrant. He contends, however, that many of the statements made by officer Chowaniec are false and that Chowaniec knew they were false at the time he signed the affidavit. He further asserts that Chowaniec knowingly or recklessly omitted other material information from the affidavit.

Reviewing the evidence submitted by the plaintiff in a light most favorable to him and drawing all inferences in his favor, the court concludes that the plaintiff has demonstrated that officer Chowaniec may have knowingly or recklessly made some misrepresentations in his affidavit. For instance, the plaintiff produced what appears to be a partial transcript of the testimony of Debra Parmalee at his criminal trial. According to that transcript, Ms. Parmalee testified that on August 30, 1989, James Smith and the plaintiff's son replaced the fender on her car. She further testified that in order to remove the old fender, Smith and the plaintiff's son stood on the hood of the car and pulled the old fender upward. When construed in a light most favorable to the plaintiff, this evidence suggests that the footprints and smudges on the hood of the car that Chowaniec noted in his affidavit were not evidence of the altercation between the plaintiff and Smith. Because Chowaniec spoke with Debra Parmalee before he filed his affidavit, he may well have been aware that the smudges and footprints were not related to the alleged altercation at the time he filed the affidavit.

During her testimony at the plaintiff's criminal trial, Debra Parmalee also indicated that Smith had bruises on his upper thigh as a result of certain medication he was required to take. When viewed in a light most favorable to the plaintiff this evidence suggests that Smith did not suffer an injury in an altercation with the plaintiff. Again, Chowaniec could have been apprised of this information by Debra Parmalee prior to filing

the affidavit in support of the arrest warrant application.

In addition to those two pieces of testimony, the plaintiff presented evidence from which it could be inferred that Chowaniec: (1) falsely reported that he had spoken to Smith personally; (2) failed to inform the court that the footprints on the hood of the car did not match those of shoes worn by the plaintiff; and (3) falsely indicated that some of the footprints on the car were "positively" from shoes worn by Smith.

Clearly, the information that was misrepresented or not disclosed to the court was not immaterial to the determination of whether there was probable cause to arrest the plaintiff. *See Golino v. City of New Haven, supra,* 950 F.2d at 872. The lack of physical evidence of a struggle or of an injury to Smith is relevant to the determination of whether a person of reasonable caution would believe that the plaintiff assaulted Smith—the lack of such evidence is particularly important in light of the fact that Smith was arrested and had a motive for asserting that he had been attacked by the plaintiff. *Id.* If the court had been aware of the lack of physical evidence of a struggle it might well have concluded that there was no probable cause to arrest the plaintiff. "The weight that a neutral magistrate would likely have given the above information . . . is not a legal question but rather is a question to be resolved by the finder of fact." *Id.*

The transcript of the trial testimony of James Smith that was submitted by the plaintiffs does not alter this conclusion. While Smith's trial testimony suggests that Chowaniec accurately reported Smith's version of the events of September 3, 1989, it does not establish that Chowaniec did not have other information indicating that Smith's story was not accurate. In short, the court cannot say as a matter of law that the affidavit accompanying the warrant "is sufficient, after correcting for material misstatements or omissions, to support a reasonable officer's belief that probable cause existed." *Cartier v. Lussier, supra,* 955 F.2d at 845.

The defendants' next argument merits little discussion. In light of the fact that the plaintiff's conviction was overturned, the court cannot say that the plaintiff's criminal trial afforded him a *"full and fair opportunity"* to litigate the issue of probable cause.[4] *See Golino v. City of New Haven, supra,* 950 F.2d at 869 (emphasis added). The fact that the conviction was reversed suggests that the trial was manifestly not fair. The plaintiff is not prohibited from challenging the issue of probable cause in this forum.

Finally, because the defendants' argument on the conspiracy count is premised on a finding that the warrant, after correcting for material falsehoods and omissions, is valid, it too must be rejected.

For the foregoing reasons, the defendants' motion for summary judgment, Filing 138, should be denied. Either party is free to seek review of this report and recommendation as provided in 28 U.S.C. § 636(b) and, Fed.R.Civ.P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges. Failure to object in a timely fashion may preclude further review. *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir.1989).

Dated at Hartford, Connecticut, this 10th day of December, 1992.

## MAGISTRATE'S OPINION ON RECONSIDERATION

On December 21, 1992, the defendants filed an objection to the undersigned's opinion recommending that their motion for summary judgment be denied. Construing the defendants' objection as a motion for reconsideration, Judge Nevas referred it to the undersigned for review. For the reasons that follow, the defendants' motion is denied.

 It is well established that the function of a motion for reconsideration is to present the court with an opportunity to correct "manifest errors of law or fact or to consider newly discovered evidence. . . ." *Rothwell Cotton Co. v. Rosenthal & Co.,* 827

---

4. While not deciding the issue, the court notes that it is not at all clear, as the defendants contend, that a motion for judgment of acquittal is an opportunity to challenge the existence of probable cause.

F.2d 246, 251 (7th Cir.1987); *Johnson v. Heckler*, 607 F.Supp. 875, 877 (N.D.Ill.1984); *Ewing v. Citytrust*, Civil No. B–87–314 (TFGD), slip op. at 1 (January 25, 1989). A motion for reconsideration cannot be employed as a vehicle for asserting new arguments or for introducing new evidence that could have been adduced during the pendency of the summary judgment motion. *Keene Corporation v. International Fidelity Insurance Company*, 561 F.Supp. 656, 665 (N.D.Ill.1983). The scope of review on motions for reconsideration is limited "to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging gaps of a lost motion with additional matters. *Lund v. Chemical Bank*, 675 F.Supp. 815, 817 (S.D.N.Y.1987)." *Fassett v. Haeckel*, Civil No. N–86–64 (EBB), slip op. at 2 (October 18, 1989).

In this case, the "objections" filed by the defendants clearly do not warrant reconsideration of the decision denying the defendants' motion for summary judgment. A careful review of the "objections" reveals that some of them are nothing more than attempts by the defendants to fill in the gaps of their lost motion. The court notes, for instance, that the defendants produced for the first time in their "objections" a transcript of portions of the testimony of Debra Parmalee in an attempt to show that the court's reliance on other portions of her testimony was inappropriate. The defendants have not, however, produced any evidence that the transcripts on which they now rely were unavailable at the time the court issued its original decision.

The defendants' also cannot prevail on their contention that the allegations of the complaint are insufficient to establish liability on the part of the supervisory officials when that argument was not raised in their original motion. *Keene Corporation v. International Fidelity Insurance Company*, 561 F.Supp. 656, 665 (N.D.Ill.1983). The defendants cannot get several bites at the apple by withholding arguments until their motion is decided in their opponent's favor.

Once the new arguments are deleted and the attempts to fill in the gaps of the lost motion are rejected, there is very little left to the defendants' motion. The undersigned fully considered the impact of James Smith's trial testimony in his initial ruling. *See* Magistrate's Opinion pp. 15–16 (December 10, 1992).[1] The defendants have done nothing to show that that decision merits reconsideration.

Similarly, the undersigned considered and rejected the defendants' argument that the plaintiff was given a full and fair opportunity to challenge the existence of probable cause in state court. The defendants' contention that the plaintiff could have challenged the existence of probable cause by making a motion for judgment of acquittal, either at the close of the state's case or at the close of all of the evidence, is without merit. A motion for judgment of acquittal made at the time of trial is not a challenge to the existence of probable cause. *See State v. Grant*, 219 Conn. 596, 599–600, 594 A.2d 459 (1991). Among the differences between the two motions is the significant fact that a court considering a motion for judgment of acquittal is required to view the evidence in a light most favorable to the state, *Id.*; while a court determining whether probable cause exists is not required to do so. *See Jaben v. United States*, 381 U.S. 214, 224, 85 S.Ct. 1365, 1370, 14 L.Ed.2d 345 (1964) (the magistrate or commissioner signing the warrant is not required to ignore the credibility of the complaining witness).

For the foregoing reasons, the defendants' "motion" is denied. Either party is free to seek review of this ruling pursuant to 28 U.S.C. § 636(b) and Fed.R.Civ.P. 6(a), 6(e) and 72; Rule 2 of the Local Rules for United States Magistrate Judges. Failure to object in a timely fashion may preclude further review.

---

1. Additionally, the defendants offer to provide the rest of the transcript of the petitioner's state criminal trial. While the court appreciates the defendants' offer it is not inclined to request the rest of the transcript at this time. If the defendants felt that those portions of the transcript were necessary to support their motion, they should have provided them to the court initially. It is the defendants' obligation to decide what materials to use to support their motion for summary judgment, not the court's.

Dated at Hartford, Connecticut, this 22nd day of January, 1993.