**Ted W. GLEAVE, Plaintiff,**

**v.**

**Virginia GRAHAM, Diane Livingston, and Glen Myszka, Defendants.**

**No. 95–CV–677S(F).**

United States District Court, W.D. New York.

May 20, 1997.

Ted W. Gleave, Grand Island, NY, pro se.

Leonard G. London, Williamsville, NY, for Defendants.

### DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

The parties to this action executed a consent to proceed before the undersigned pursuant to 28 U.S.C. § 636(c), which was filed on October 17, 1995. The matter is presently before the court on Defendant's motion for reconsideration (Doc. # 16), filed on April 30, 1997.

## BACKGROUND

Plaintiff Ted W. Gleave commenced this *Bivens* action on August 11, 1995 against Defendants, employees of a halfway house in which Gleave had served a ninety day term following his conviction on bankruptcy fraud charges, alleging such defendants had violated his rights to due process under the Fifth Amendment by collecting an allegedly illegal subsistence fee from Gleave to help defray the costs of operating the halfway house. Gleave further alleged that he paid the fee under protest because Defendants had threatened him with incarceration in a correctional if Gleave failed to make such payments. Gleave sought damages for this loss of his property, in addition to mental anguish and punitive damages.

Defendants' answer denied the Complaint's allegations insofar as it asserted that the required payments were illegal and asserted that the challenged payments were authorized pursuant to a contract between Buffalo Halfway House, Inc., a non-profit entity, and the Federal Bureau of Prisons ("BOP"). On November 1, 1995, Defendants filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(c). Gleave filed papers in opposition to such motion on November 8, 1995 and Defendants filed a reply on December 27, 1995.

On January 22, 1997, the undersigned granted Defendants' motion to dismiss Gleave's complaint, finding that both the questioned subsistence payments and the Defendants' collection of such payments were authorized pursuant to federal statutes, regulations and the BOP's internal policy guidelines. Gleave moved for reconsideration on April 30, 1997 and Defendants filed an affirmation in opposition to reconsideration on May 15, 1997.

For the following reasons, the motion to reconsider is DENIED.

## DISCUSSION

As a threshold matter, the court notes that Gleave filed the instant motion pursuant to Fed.R.Civ.P. 59 which provides that "[a] motion to amend or alter the judgment shall be filed no later than 10 days after the entry of the judgment." Fed.R.Civ.P. 59(e). Rule 59 applies to orders dismissing actions prior to trial. *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37 (2d Cir.1982); *Schaurer v. Coombe*, 108 F.R.D. 180 (W.D.N.Y.1985). Thus, as the Decision and Order for which Gleave seeks reconsideration was entered on January 22, 1997, and as Gleave did not filed the instant motion until April 30, 1997, Gleave is well beyond the ten day period in which to move for reconsideration under Rule 59(e). Additionally, although generally an appeal to the court of appeals must be filed within thirty days of the entry of a judgment, such thirty-day period is tolled pending judgment on a timely filed motion for reconsideration. Fed.R.App.P. 4(a)(4). However, given Gleave's *pro se* status, considering in the alternative, Gleave's motion as one not brought pursuant to Rule 59(e), the motion should nevertheless be denied.

It is well established that the function of a motion for reconsideration is to present the court with an opportunity to correct "manifest errors of law or fact or to consider newly discovered evidence . . . ." *Lo Sacco v. City of Middletown*, 822 F.Supp. 870, 876–77 (D.Ct.1993), *aff'd*, 33 F.3d 50 (2d Cir.1994) (quoting *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir.1987)). The scope of review on motions for reconsideration is limited "to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging gaps of a lost motion with additional matters." *Lo Sacco, supra*, at 877 (quoting *Lund v. Chemical Bank*, 675 F.Supp. 815, 817 (S.D.N.Y.1987)).

Gleave seeks reconsideration of this court's January 22, 1997 Decision and Order granting Defendants' motion for judgment on the pleadings and dismissing Gleave's complaint, arguing that certain relevant facts which would have been revealed upon discovery and oral argument would have required the court to deny the motion for judgment on the pleadings. Specifically, Gleave contends that (1) the court erred in analyzing his sentence in accordance with the United States Sentencing Guidelines (U.S.S.G.) as he was convicted of offenses committed prior to November 1, 1987, the date such guidelines took effect; and (2) Gleave was not required to

make such subsistence payments as his incarceration at the Buffalo Halfway House was court ordered rather than voluntary.

■ As to the issue of whether the U.S.S.G. apply to Gleave's sentence, Gleave relies on the axiom that ex post facto laws generally are prohibited in criminal proceedings. Affirmation in Support of Motion Pursuant to Rule 59 ("Gleave Affirmation"), ¶ 5. However, U.S.S.G. § 1B1.11(a) provides that "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." Thus, even though the criminal activity for which Gleave was ultimately convicted occurred prior to the enactment of the U.S.S.G., as the guidelines were in effect when Gleave was sentenced, the court properly considered the application of such guidelines in analyzing Gleave's sentence.

■ As to the issue of whether Gleave was statutorily exempt from payment of the subsistence fee because his incarceration at Buffalo Halfway House was court ordered as opposed to voluntary, the court notes that Gleave has raised such issue the first time in this motion. Gleave points to no authority in support of such interpretation, but rather argues that an understanding of the history of the halfway house program supports his argument. Specifically, Gleave claims that halfway houses were originally developed to facilitate the reintegration of former correctional facility inmates who had no families, homes or jobs, back into society. Gleave Affirmation, ¶ 7. Eventually, as traditional correctional facilities reached their capacity, inmates with good institutional records were offered the opportunity to be released from the traditional correctional facility to serve the last six months of their sentence in a halfway house. *Id.* at ¶ 9. However, to be accepted into the halfway house program, the inmate had to agree to abide by the halfway house's rules and regulations, which included making the subsistence payments at issue. *Id.* at ¶¶ 10–11. Failure to make such payment would result in either loss of certain privileges or return to the correctional facility. *Id.* at ¶ 12. The crux of Gleave's argument is that where an inmate is given a choice to enter the halfway house, such inmate is given the opportunity to consider the imposition of the subsistence payment in evaluating whether to accept the offer.

The court's decision makes it is clear that regardless of whether Gleave's entrance into Buffalo Halfway House was voluntary or pursuant to the sentencing court's order, Gleave was required to abide by the rules and regulations of the Buffalo Halfway House, which included payment of the subsistence fee. Gleave also asserts that although he initially refused to make the subsistence payments, he acquiesced upon being advised that his failure to remit the payments would result in his incarceration in a traditional correctional facility. These actions demonstrate that although Gleave was originally sentenced to the Buffalo Halfway House, he chose to make the required subsistence payments that would enable him to remain at the halfway house, rather than face possible incarceration in a traditional correctional facility.

■ Gleave also contends that it was error for the Buffalo Halfway House to include his monthly veterans benefits in his income in calculating the 25% weekly subsistence However, the court thoroughly considered this issue in its decision and order, finding that there was no provision limiting the calculation of the subsistence fee solely to income from wages or other sources, but rather that such subsistence payments were properly calculated based on a halfway house resident's gross income, regardless of the source. Gleave points to no authority in support of his interpretation and the court finds no reason to alter its original finding.

### CONCLUSION

Based on the foregoing discussion, Gleave's motion for reconsideration (Doc. # 16) is DENIED.

SO ORDERED.