OFFICE OF CONSUMER COUNSEL and New England Cable and Telecommunications Association, Inc., Plaintiffs,

v.

SOUTHERN NEW ENGLAND TELEPHONE COMPANY d/b/a AT & T Connecticut, Inc. and Department of Public Utility Control of the State of Connecticut, Defendants.

No. 3:06cv1106 (JBA).

United States District Court, D. Connecticut.

Oct. 2, 2007.

Burton B. Cohen, Murtha Cullina, James F. Dedonato, William H. Bright, Jr., McCarter & English, Hartford, CT, Marilyn Beth Fagelson, Murtha Cullina LLP, New Haven, CT, Paul Glist, T. Scott Thompson, Davis Wright Tremaine LLP, Bruce D. Sokler, Howard J. Symons, Robert G. Kidwell, Tara M. Corvo, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, Washington, DC, William L. Vallee, Jr., Connecticut Office of Consumer Counsel, New Britain, CT, for Plaintiffs.

Charles R. Andres, Timothy P. Jensen, Tyler, Cooper & Alcorn, LLP, George M. Moreira, Southern New England Telephone Co., New Haven, CT, David L. Schwarz, Geoffrey M. Klineberg, Kelly P. Dunbar, Kellogg, Huber, Hansen, Todd, Evans & Figel, Washington, DC, John G. Haines, Tatiana D. Eirmann, Attorney General's Office, New Britain, CT, for Defendants.

## RULING ON MOTION FOR RECONSIDERATION
### [DOC. # 80]

JANET BOND ARTERTON, District Judge.

Familiarity with the factual and procedural background of this consolidated action is presumed. On July 26, 2007, 515 F.Supp.2d 269, 2007 WL 217503, this Court granted summary judgment [Doc. # 78] in favor of the Office of Consumer Counsel, the New England Cable and Telecommunications Association, Inc., and the Cablevision plaintiffs in the companion case (No. 06cvll06) on Counts 1 and 2 of each complaint. The Court summarized its holding as follows:

> For the reasons detailed *infra,* the Court concludes that the new service being offered by AT & T, which was the subject of the DPUC's June 7, 2006 decision, constitutes a "cable service" being offered over a "cable system" by a "cable operator," as those terms are defined in the federal Cable Act. Accordingly, the Court holds that the DPUC's conclusions to the contrary, and its concomitant determination that AT & T need not comply with the franchising requirement in 47 U.S.C. § 541 and the regulations promulgated thereunder, are preempted by federal law,

(Summ. J. Ruling at 2, 515 F.Supp.2d at 271, 2007 WL 2175083, at *1.) Shortly thereafter, defendant Southern New England Telephone Company, doing business as AT & T Connecticut, Inc. ("AT & T") moved for reconsideration [Doc. # 80] of this ruling on several grounds. AT & T seeks reconsideration on grounds that the ruling

> is inconsistent with the FCC's authoritative and binding construction of the relevant statutory language; does not address several other provisions of the Cable Act that cannot be reconciled with the construction the Court has

placed upon 47 U.S.C. § 522(5)-(7); and fails to afford appropriate deference to critical factual findings by the DPUC concerning the interactive nature and capabilities of AT & T's U-verse TV product.

( AT & T's Status Rep. [Doc. # 83] at 3.) For the reasons that follow, AT & T's motion is denied.

## I. Standard

 The standard for reconsideration is "strict," and reconsideration is only appropriate where the moving party can point to controlling law or evidence that "might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration gives the Court an opportunity to "correct manifest errors of law or fact or to consider newly discovered evidence." *LoSacco v. City of Middletown*, 822 F.Supp. 870, 876–77 (D.Conn.1993) (internal quotation and citation omitted), *aff'd* 33 F.3d 50 (2d Cir. 1994). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992) (*quoting* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478). But such a motion "should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257.

## II. Discussion

AT & T has pointed to what it characterizes as "four distinct and substantial legal errors in the Court's opinion, as well as two important factual issues that the Court overlooked." (AT & T's Reply at 1.)

### A. The Cable Modem Ruling

 First, AT & T argues that the FCC's Cable Modem Ruling "supplies the legal standard that the Court must apply to the facts of this case," and that the Court erred in "[reifying] upon its independent review of the legislative history rather than upon the FCC's authoritative interpretation of the statutory text." (AT & T's Reply at 5.) However, this is a misrepresentation of the summary judgment ruling, which found that the statutory language, legislative history, and relevant FCC interpretations all support the same conclusion. In addition to discussing and quoting from the Cable Modem Ruling at length (Summ. J. Ruling at 20–24), the Court impliedly assumed that the FCC's view of the Cable Act definitions is authoritative, finding that "the level of interactivity required exactly fits into the FCC's own characterization of what Congress intended by its 'cable service' definition" (*id.* at 22). Therefore, as the issue has already been fully considered, this is an insufficient ground for granting reconsideration.[1]

---

**1.** Moreover, the Court is unpersuaded by the merits of AT & T's characterization of the Cable Modem Ruling. The two sections principally relied on by AT & T read in full:

> 61. *One–Way Transmission to Subscribers.* The phrase "one-way transmission to subscribers" in the definition reflects the traditional view of cable as primarily a medium of mass communication, with the same package or packages of video programming transmitted from the cable operator and available to all subscribers. When the definition was enacted in 1984, cable systems designed for the traditional one-way delivery of programming were developing the capability to provide " 'two-way' services, such as the transmission of voice and data traffic, and transactional services such as at-home shopping and banking." The legislative history indicates that Congress intended the cable service definition "to mark the boundary between those services provided over a cable system which would be exempted from common carrier regulation under section 621(c) and all other communications services that could be provided

■ In addition to the Cable Modem Ruling, the parties discuss a more recent FCC ruling—the Section 621 Order, 22 F.C.C.R. 5101 (F.C.C.2007) which—the Court did not address in its summary judgment ruling. However, as AT & T impliedly concedes, the Section 621 Order offers no support for its position. Although the FCC discussed the definitional issues regarding interactive video services, it explicitly "d[id] not address ... what particular services may fall within the definition [of 'interactive on-demand services']," nor "the regulatory classification of any particular video services," nor "whether video services provided over Internet Protocol are or are not 'cable services.'" 22 F.C.C.R. at 5155–56.

Taken together in the manner most favorable to AT & T as if this ruling were being considered as part of the summary judgment record, these FCC orders would not have altered disposition of the summary judgment motion and thus do not provide grounds for reconsideration.

## B. Definition of "video programming"

■ Second, AT & T contends that the Court failed to "discuss the definition of 'video programming,' let alone explain how established canons of statutory interpretation permit it to square that definition with its own interpretation of 'cable service.'" (AT & T's Reply at 5–6.) This, too, mischaracterizes the Court's ruling, which discussed at length the relevant statutory definitions before ultimately rejecting AT & T's arguments. AT & T has made clear that it disagrees with this Court's construction of the Cable Act in relation to its U-verse service, but that is not a proper basis for reconsideration.

## C. "Subscriber awareness"

■ Third, AT & T "argu[es] that the Court erred in adopting—with no explanation—a 'subscriber awareness' test for interactivity that has no basis in the [Cable Act] or the FCC's interpretation of the statute." (AT & T's Reply at 6.) Once again mischaracterizing the July 26 ruling, this argument goes to the heart of what

over a cable system." Thus, the definition reflected the traditional view that the one-way delivery of television programs, movies, and sporting events is not a traditional common carrier activity and should not be regulated as such....

64. *Subscriber Interaction.* While "cable service" is defined as the "one-way transmission" of video programming or other programming services, the definition specifically contemplates some subscriber interaction. The definition enacted in 1984 provided for "subscriber interaction, if any, which is required for the selection" of content, so that cable service includes subscribers' ability to select video programming and information provided in other non-video programming services. The legislative history states that Congress intended "simple menu-selection" or searches of pre-sorted information from an index of keywords that would not activate a sorting program and "would not produce a subset of data individually tailored to the subscriber's request" to be cable services. On the other hand, offering the capacity to engage in transactions or off-premises data processing, including unlimited keyword searches or the capacity to communicate instructions or commands to software programs stored in facilities off the subscribers' premises, would not be. Thus, operators offering video programming or non-video information could also offer subscribers the on-line capability to choose the content of interest to them, but not to manipulate, customize or interact with the information on-line. As the Commission has held, services offering a high degree of interactivity, such as offering subscribers the capability for tailoring a video image to a subscriber's specific requests, would fall outside the scope of video programming under the definition of "cable service" enacted in 1984.

Cable Modem Ruling, 17 F.C.C.R. 4798, 4833–36 (F.C.C.2002) (footnotes omitted).

formed the basis for granting summary judgment: that the extent of interactivity in the AT & T service is insufficient to remove it from falling within the statutory definition of "cable service." According to AT & T, the Court also failed to consider contrary authority on this point, specifically the Ninth Circuit's ruling in *AT&T Corp. v. City of Portland*, 216 F.3d 871, 876–77 (9th Cir.2000). But this again is an insufficient ground for reconsideration, particularly since the Court in fact cited to and quoted from that opinion in the course of interpreting the term "cable service." (Summ. J. Ruling at 18.) AT & T has characterized this opinion as "concluding that Internet access service involves the 'two-way' exchange of information 'even when a user views seemingly static content.'" (AT & T's Reply at 6 (*quoting City of Portland*, 216 F.3d at 876–77).) In that case, the court was distinguishing between broadband Internet access and cable television service, and the full context of the fragment quoted by AT & T is more representative:

> [U]nlike transmission of a cable television signal, communication with a Web site involves a series of connections involving two-way information exchange and storage, even when a user views seemingly static content. Thus, the communication concepts are distinct in both a practical and a technical sense. Surfing cable channels is one thing; surfing the Internet over a cable broadband connection is quite another.

*City of Portland*, 216 F.3d at 876–77.

AT & T also references the Section 621 Order in relation to this ground for reconsideration, but the Court does not read the FCC's order as supporting the argument advanced by AT & T, "namely, that services that look alike to consumers must necessarily be regulated similarly." (*See* AT & T's Reply at 6; AT & T's Mem. in Supp. at 23.) As explained above, the Section 621 Order expressly did not decide the issues before the Court in this case, and the FCC's discussion of its earlier Cable Modem Ruling was limited to the following statement:

> The Commission determined in the Cable Modem Declaratory Ruling that a franchise authority may not assess franchise fees on non-cable services, such as cable modem service, stating that "revenue from cable modem service would not be included in the calculation of gross revenues from which the franchise fee ceiling is determined." Although this decision related specifically to Internet access service revenues, the same would be true for other "non-cable" service revenues. Thus, Internet access services, including broadband data services, and any other non-cable services are not subject to "cable services" fees.

22 F.C.C.R. at 5146–47. Plainly, this excerpt, even assuming it to be entitled to full deference, does not resolve the question of whether AT & T's service meets the operative definitions in the Cable Act.

**D. Streaming video**

■ Finally, AT & T "point[s] out that the Court's efforts to distinguish Internet streaming and AT & T's U-verse TV service relied on factually inaccurate distinctions," leading to a definition of 'cable service' that "encompasses Internet streaming [and] is far too broad." (AT & T's Reply at 7–8.) The Court disagrees that its prior ruling leads to an "extraordinary" construction of the Cable Act. Plaintiffs rightly point out that "even if MLB.com's streaming of video programming were a 'cable service,' a question that cannot be answered with the facts before the Court, that does not mean, as AT & T asserts, that MLB must acquire cable franchises across the country." (Pls.' Mem. in Opp. at 7.) The parties have fully addressed and the Court has ruled on the distinctions between AT & T's service and streaming Internet video,

and so this ground for reconsideration also fails.

### E. Factual issues

AT & T further argues that the Court "overlooked key facts," specifically in regard to the extent of two-way interactivity inherent in AT & T's service. (AT & T's Reply at 8–9.) But this merely rehashes the arguments previously raised as to the character of the DPUC's findings. Contrary to AT & T's characterization of the July 26 ruling, the Court *has* "effectively addressed whether there are legally significant differences between AT & T's [service] and Internet streaming." (AT & T's Reply at 7.) AT & T's speculative assertions about the future capabilities of its U-verse service are also unconvincing, as the Court considered the factual record and concluded that AT & T's existing product constitutes "cable service" within the meaning of the Cable Act.

## III. Conclusion

Accordingly, AT & T's Motion for Reconsideration [Doc. # 80] is DENIED.

IT IS SO ORDERED.